IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

<table>
<tr><td>LEXINGTON INSURANCE COMPANY,</td><td>)</td><td>CIVIL NO. 10-00655 SOM/KSC</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Plaintiff,</td><td>)</td><td>ORDER TRANSFERRING VENUE</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>vs.</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>CENTEX HOMES and DOES 1-50,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Defendants.</td><td>)</td><td></td></tr>
<tr><td>_____</td><td>)</td><td></td></tr>
</table>

ORDER TRANSFERRING VENUE

I.      INTRODUCTION.

        In this insurance dispute, Defendant Centex Homes
("Centex") asks the court to enforce an indisputably valid
arbitration provision in its insurance policy that requires
arbitration of "disagreement[s] as to the interpretation of this
policy." Centex asks the court to order the parties to arbitrate
in Dallas, Texas, pursuant to the terms of their policy. Because
the Federal Arbitration Act ("FAA" or the "Act") does not permit
a district court to compel arbitration outside its judicial
district, the only ruling this court could issue if it ruled on
Centex's motion would be to deny the motion. This would be so
even if the court considered Centex's motion meritorious. To
ensure a fair consideration of the merits of the motion, this
court transfers this case to the United States District Court for
the Northern District of Texas, which would be empowered to
either grant or deny the motion.

II.     <u>FACTUAL BACKGROUND.</u>

A few years ago, Centex developed Kolea at Waikoloa
Beach Resort Condominiums, a residential development project in
Waikoloa, on the Big Island of Hawaii.  <u>See</u> Compl. ¶¶ 12-13, ECF
No. 1; Commc'l Gen. Liab. Policy--Claims Made Form Declarations
("Policy Declarations") 1, Compl. Exh. A, ECF No. 1-1.  In
connection with the development, Lexington issued a liability
policy (the "Policy") to Centex.  <u>See</u> Compl. ¶ 11 & Exh. A.
Subject to various exclusions, the Policy provides coverage for
bodily injury, property damage, and "personal and advertising
injury" arising out of the Kolea project.  <u>See</u> Policy
Declarations 1; <u>see generally</u> Policy (setting forth coverage and
exclusions).

The Policy is a "claims made" policy, covering claims
"first made against an insured during the policy period or an
extended reporting period."  <u>See</u> Compl. ¶ 18; Policy Declarations
1; Residential Wrap-Up Commc'l Gen. Liab. Policy Claims Made Form
("Policy") 1.  A claim is deemed to have been made, <u>inter alia</u>,
"[w]hen notice of such claim is received by any insured or by us,
whichever comes first."  Policy § I, Coverage A, ¶ 1.c.[1], p. 2.
The Policy period is May 12, 2003, to May 20, 2007.  <u>See</u> Policy
Declarations 1.  The Policy also provides for an "Extended
Reporting Period" that "begins on the expiration of this policy
and ends when the applicable statute of limitations with respect

to any construction defect expires." Policy § V, ¶ 16 ("Extended Reporting Period"), p. 30.

The Policy has a self-insured retention amount ("SIR" or "Retained Amount") of $150,000. Compl. ¶ 20. With respect to the SIR, the Policy provides that "[w]e do not have the duty to investigate or defend any 'occurrence', offense, claim or 'suit' unless and until the Retained Amount is exhausted with respect to that 'occurrence', offense, claim or 'suit.'" See Policy § I, Defense & Settlement--Coverages A & B, ¶ 2 ("Within the Retained Amount"), p. 15.

Finally, the Policy contains an arbitration provision. The arbitration provision provides, in relevant part, that "in the event of a disagreement as to the interpretation of this policy, it is mutually agreed that such dispute shall be submitted to binding arbitration." Policy, Section V, ¶ 18, p. 31. The Policy provides for Dallas, Texas, to be the forum for arbitration, unless the parties agree otherwise. See Mem. Supp. Mot. 2-3, 5, 23, ECF No. 9-1 ("Centex's 2/18/11 Mot. Dismiss"); Policy § V, ¶ 18 ("The arbitration proceeding shall take place in the vicinity of the Named Insured's address as shown in the Declarations or such other place as may be mutually agreed by the Named Insured and us."), p. 31; Policy Declarations 1 (listing Centex's address as "P.O. Box 199000, Dallas, TX 75219").

According to Lexington, in March 2010, homeowners began to notify Centex of damage resulting from leaky shower pans in units.  Compl. ¶¶ 14, 18; <u>see also</u> Centex's 2/18/11 Mot. Dismiss 3.  Centex gave Lexington notice of a homeowner complaint in May 2010 and sought insurance coverage.  <u>See</u> Ltr. fr. R. Lujan to Lexington, May 7, 2010, Decl. M. Jarrett Coleman, Feb. 18, 2011 ("2/18/11 Coleman Decl."), Exh. A, ECF No. 9.  Lexington denied coverage on September 16, 2010.  <u>See</u> Ltr. fr. J. Burruano to R. Lujan, Sept. 16, 2010, 2/18/11 Coleman Decl. Exh. B.  The repair cost for all units is estimated at $930,000.  Compl. ¶ 14.

III.    <u>PROCEDURAL HISTORY.</u>

On November 10, 2010, Lexington filed a Complaint for Declaratory Relief.  ECF No. 1.  The Complaint alleges that Lexington has no liability to Centex for the homeowner claims at issue for various reasons.  Specifically, the Complaint alleges that various provisions in the Policy exclude coverage for: (1) expected or intended property damage; (2) liability that is assumed in a contract or agreement; (3) damage to Centex's own "product, work and impaired property," and (4) damages stemming from any failure to render professional services by Centex's engineers, architects, or surveyors.  <u>See</u> Compl. ¶ 19; <u>see also</u> Compl. p. 6 (praying for declaration).  The Complaint also asserts that Centex must pay the $150,000 SIR before Lexington is required to defend or indemnify Centex.  Compl. ¶ 20.

4

The Complaint seeks a declaration "that the owners'
underlying claim does not constitute 'Property Damage' caused by
an 'Occurrence' under the terms of the Lexington Policy and
Hawaii law," a declaration that the underlying claim was not
first made within the Policy period, and a declaration that
Lexington has no duty to defend or indemnify or Centex in
connection with any litigation that may occur as a result of the
owners' underlying claim or to pay Centex for any repairs it may
make concerning the underlying claim.  See Compl. pp. 6-7.  On
February 18, 2011, Centex moved to dismiss or, in the
alternative, to stay the lawsuit, and to compel arbitration
"consistent with Paragraph 18 (the 'Arbitration Clause')
contained in [the Policy]."  Centex's 2/18/11 Mot. Dismiss 2.

Centex sought to compel arbitration in Dallas, Texas,
the forum specified by the parties' arbitration agreement.  See
id. at 2-3, 5, 23; Policy § V, ¶ 18; Policy Declarations 1.
While not disputing the validity of the arbitration provision,
Lexington opposed the motion on the ground that the disputed
issues fell outside the scope of the arbitration provision.  See
Lexington's Opp. Centex's Mot. Dismiss or Stay Pl.'s Compl. &
Compel Arbitration 9-20, ECF No. 14 ("Lexington's 3/21/11 Opp.").

On April 11, 2011, the court held a hearing on Centex's
motion.  See Minutes, Apr. 11, 2011, ECF No. 20.  The court
indicated that it was inclined to conclude that the disputed

issues were arbitrable, but it was uncertain as to the scope of
the arbitration order the court was empowered to enter.  The
court discussed with the parties the question of whether the FAA
permits a district court in Hawaii to order arbitration in Texas.
See 9 U.S.C. § 4 (requiring that "[t]he hearing and proceedings,
under such [arbitration] agreement, shall be within the district
in which the petition for an order directing such arbitration is
filed").  The court ordered the parties to submit simultaneous
supplemental briefs on this issue.  See Minutes, Apr. 11, 2011;
see also ECF No. 21.

        Lexington's supplemental brief, primarily relying on
Continental Grain Co. v. Dant & Russell, 118 F.2d 967 (9th Cir.
1941), argued that the FAA grants the court authority to compel
arbitration only in Hawaii, the judicial district in which
Centex's motion to compel was filed.  See Lexington's Supp. Br.
4-7, ECF No. 25 ("Lexington's 4/15/11 Supp. Br.").  Centex argued
that Continental Grain does not control the outcome of this case,
and that the court remains free to order arbitration in Texas.
See Centex's Supp. Br. 5-6, ECF No. 26 ("Centex's 4/15/11 Supp.
Br.").  In the alternative, Centex argued that the court should
transfer the case to the United States District Court for the
Northern District of Texas.  Id. at 6-7.

        The court subsequently ordered Lexington to show cause
why this case should not be transferred to the Northern District

6

of Texas.  Lexington and Centex submitted short supplemental
briefs on this issue, and the court took the matter under
advisement.

IV.     LEGAL STANDARDS.

        A.   To Compel Arbitration.

        The FAA governs arbitration agreements in contracts
involving interstate commerce.  See 9 U.S.C. §§ 1-2.  Under the
FAA, arbitration agreements "shall be valid, irrevocable, and
enforceable, save upon such grounds that exist at law or in
equity for the revocation of any contract."  Id. § 2.  "A party
aggrieved by the alleged failure, neglect, or refusal of another
to arbitrate under a written agreement for arbitration may
petition" a United States district court with jurisdiction "for
an order directing that such arbitration proceed in the manner
provided for in such agreement."  Id. § 4.  The FAA also provides
that "[t]he hearing and proceedings, under such agreement, shall
be within the district in which the petition for an order
directing such arbitration is filed."  Id.

        The Act's provisions reflect a "liberal federal policy
favoring arbitration agreements."  Gilmer v. Interstate/Johnson
Lane Corp., 500 U.S. 20, 25 (1991) (quoting Moses H. Cone Mem'l
Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)).  This
"national policy" is enforceable in both state and federal courts
and preempts any state laws or policies to the contrary.  See

7

<u>Preston v. Ferrer</u>, 552 U.S. 346, 349 (2008) (quoting <u>Southland</u>
<u>Corp. v. Keating</u>, 465 U.S. 1, 10 (1984)).

A court interpreting an arbitration agreement must
resolve ambiguities as to the scope of the arbitration clause in
favor of arbitration. <u>See</u> <u>Mastrobuono v. Shearson Lehman Hutton,</u>
<u>Inc.</u>, 514 U.S. 52, 62 (1995); <u>United Steelworkers of Am. v.</u>
<u>Warrior & Gulf Navigation</u>, 363 U.S. 574, 584-85 (1960) ("In the
absence of any express provision excluding a particular grievance
from arbitration . . . only the most forceful evidence of a
purpose to exclude the claim from arbitration can prevail.").

In determining whether to compel a party to arbitrate,
a district court may not review the merits of the dispute;
rather, the court's role under the FAA is limited "to determining
(1) whether a valid agreement to arbitrate exists and, if it
does, (2) whether the agreement encompasses the dispute at
issue." <u>Cox v. Ocean View Hotel Corp.</u>, 533 F.3d 1114, 1119 (9th
Cir. 2008) (citation and quotation marks omitted). In construing
the terms of an agreement, the court "appl[ies] general state-law
principles of contract interpretation, while giving due regard to
the federal policy in favor of arbitration by resolving
ambiguities as to the scope of arbitration in favor of
arbitration." <u>Wagner v. Stratton Oakmont, Inc.</u>, 83 F.3d 1046,
1049 (9th Cir. 1996). If the court determines that a valid
arbitration agreement encompasses the parties' dispute, the FAA

requires the court to enforce the arbitration agreement according to its terms.  _Lifescan, Inc. v. Premier Diabetic Servs., Inc._, 363 F.3d 1010, 1012 (9th Cir. 2004).  Therefore, a district court must compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  _United Steelworkers of Am._, 363 U.S. at 582-83.

If the court concludes that the lawsuit at issue is covered by an enforceable arbitration agreement, and one party to the agreement seeks to enforce the arbitration provision, the court may stay the lawsuit until the arbitration has been completed.  9 U.S.C. § 3.  A stay, however, is not mandatory and the court may alternatively dismiss those claims that are subject to arbitration.  _See Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc._, 368 F.3d 1053, 1060 (9th Cir. 2004); _Sparling v. Hoffman Constr. Co._, 864 F.2d 635, 638 (9th Cir. 1988) (holding that, when an "arbitration clause was broad enough to bar all of the plaintiff's claims since it required [the plaintiff] to submit all claims to arbitration," those claims could be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6)).

B.    To Transfer Venue.

Transfer of a case to cure improper venue is proper when the transfer would be "[f]or the convenience of parties and

witnesses," and would also be "in the interest of justice." 28
U.S.C. § 1404(a). The court may transfer venue <u>sua sponte</u>, so
long as the parties are first given an opportunity to present
their views on the issue. <u>Costlow v. Weeks</u>, 790 F.2d 1486, 1488
(9th Cir. 1986).

V.       <u>ANALYSIS.</u>

This court feels constrained in ruling on Centex's
motion to compel arbitration. The only order this court thinks
it is empowered to enter is a denial of the motion. The court
concedes that, in other contexts in which it is so constrained,
it does indeed deny motions. Thus, for example, when a criminal
matter is on appeal but a defendant asks this court to consider
new evidence and order a new trial, this court recognizes that it
lacks jurisdiction to order a new trial of a matter that is on
appeal. In that circumstance, this court could only deny the
motion on its merits, and the court has had occasion to do
precisely that. The problem for this court in taking that path
with Centex's motion is that it is not clear to the court that
denial is the correct result on the merits of the motion. If the
only reason for denying the motion is that the court lacks
authority to grant it, even if a grant might be merited, this
court thinks the better course is to transfer the matter to a
court that could rule on the merits as it saw fit.

So that the bases of this order transferring this case

are clear, this court begins by saying that it reads § 4 of the FAA as limiting any order by this court for the parties to arbitrate to an arbitration here in Hawaii. However, if an arbitration is to occur, it may well be that it should occur in Texas. A court in Texas might rule that the parties' dispute is not arbitrable at all, but any such ruling would not be affected by concern that the court could not order arbitration. It is to ensure a determination that turns on the merits, not on geographical constraints, that this court transfers this action to the United States District Court for the Northern District of Texas, laying out here, for whatever it is worth, the doubts this court has that it should deny Centex's motion on its merits.

### A. The Court Is Not Empowered to Order Arbitration in Texas.

There is no dispute that the Policy reflects an agreement by the parties to arbitrate in Texas. See Policy § V, ¶ 18 ("The arbitration proceeding shall take place in the vicinity of the Named Insured's address as shown in the Declarations or such other place as may be mutually agreed by the Named Insured and us."), p. 31; Policy Declarations 1 (listing Centex's address as "P.O. Box 199000, Dallas, TX 75219"). However, the court agrees with Lexington that the court is precluded from ordering the parties to arbitrate outside of this judicial district.

Although interpretation of arbitration agreements is

generally a matter of state law, the FAA imposes certain fundamental rules on arbitration procedures. <u>Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.</u>, __ U.S. __, 130 S. Ct. 1758, 1773 (2010). With regard to the location of a compelled arbitration, the language of § 4 of the FAA is plain. Upon proper motion, the court is authorized to "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, *shall be within* the district in which the petition for an order directing such arbitration is filed." 9 U.S.C. § 4 (emphasis added); <u>see</u> <u>Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.</u>, 467 U.S. 837, 843 (1984) (explaining that the court's duty is to "give effect to the unambiguously expressed intent of Congress," when possible).

The Ninth Circuit has held that this language prohibits a district court from ordering parties to arbitrate outside of the district in which a motion to compel is filed. In <u>Continental Grain Co. v. Dant & Russell</u>, 118 F.2d 967 (9th Cir. 1941), the Ninth Circuit considered a petition filed in Oregon seeking to compel arbitration in New York, under a contract's forum selection clause. <u>Id.</u> at 968. Relying on the plain language of § 4, the Ninth Circuit affirmed the district court's order compelling arbitration in Oregon despite the designation of New York in the parties' agreement. <u>See</u> <u>id.</u> at 968-69. The

court reasoned that "[p]rior to the enactment of the United States arbitration act (1925) such agreements could not be enforced in the courts of the United States," and so "Congress could attach any limitation it desired to the right to enforce arbitration in the federal courts."  Id. at 969; see also Textile Unlimited, Inc. v. A..BMH & Co., 240 F.3d 781, 785 (9th Cir. 2001) (stating that § 4's "plain language" "confines the arbitration to the district in which the petition to compel is filed") (emphasis omitted).

As Centex points out, Continental Grain may be distinguishable from the facts of this case.  See Centex's 4/15/11 Supp. Br. 4-6.  In Continental Grain, the plaintiff seeking to arbitrate in New York had voluntarily filed suit in Oregon, and the Ninth Circuit had therefore concluded that it was fair to bind the plaintiff to suit in Oregon, notwithstanding a forum selection clause designating New York.  By contrast, Centex, the party seeking an order compelling arbitration, is the defendant in this case and so has not sought out Hawaii as a forum.  See id.  Indeed, this court's understanding is that the Ninth Circuit has never addressed the situation before this court, in which the party seeking to compel arbitration is not the party that originally filed suit in a jurisdiction other than that agreed to by the parties.

Nevertheless, <u>Continental Grain</u> does not limit itself to cases in which the party seeking to compel arbitration filed the federal suit, and the decision has never been overturned. The court is persuaded that if it enters an order compelling arbitration, § 4 and <u>Continental Grain</u> would likely require the court to order that such arbitration take place within the District of Hawaii. <u>Cf.</u> <u>Homestake Lead Co. of Mo. v. Doe Run Res. Corp.</u>, 282 F. Supp. 2d 1131, 1143-44 (N.D. Cal. 2003) (holding that <u>Continental Grain</u> bound the court to order arbitration in California, even though the contractually designated forum was St. Louis, Missouri); <u>Randhawa v. Skylux Inc.</u>, No. Civ. 2:09-2304 WBS/KJN, 2010 WL 4069654, at *2-*3 (E.D. Cal. Oct. 18, 2010) (denying motion to compel arbitration in Chicago in light of <u>Continental Grain</u> but declining to compel arbitration in California because that forum was inconsistent with parties' agreement and instead staying case).

B.    <u>Transfer of this Case to Texas Is Appropriate.</u>

In this court's view, however, entering an order compelling the parties to arbitrate in Hawaii would also run afoul of the FAA because such an order would contradict the terms of a valid arbitration agreement. The Supreme Court has "said on numerous occasions that the central or 'primary' purpose of the FAA is to ensure that 'private agreements to arbitrate are enforced according to their terms.'" <u>Stolt-Nielsen S.A.</u>, 130 S.

14

Ct. at 1773 (quoting Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ., 489 U.S. 468, 479 (1989)). "[P]assage of the Act was motivated, first and foremost, by a congressional desire to enforce agreements into which parties had entered." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 220 (1985); see also Volt, 489 U.S. at 474 (FAA's purpose was to place arbitration agreements "upon the same footing as other contracts") (quoting H.R. Rep. No. 96, 68th Cong., 1st Sess., 1, 2 (1924)).

In determining whether to compel a party to arbitrate, the district court's role is limited by the FAA "to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." Cox, 533 F.3d at 1119 (citation and quotation marks omitted). If the court determines that a valid arbitration agreement encompasses the parties' dispute, the court must enforce the arbitration agreement according to its terms. See Lifescan, Inc., 363 F.3d at 1012. Indeed, § 4 confers upon parties--no less than twice--the right to obtain arbitration on the terms provided for in the parties' agreement. See 9 U.S.C. § 4 (permitting aggrieved parties to petition the court "for an order directing that such arbitration proceed *in the manner provided for in such agreement*" and directing that, upon proper motion, "the court shall make an order directing the parties to

proceed to arbitration *in accordance with the terms of the agreement*") (emphasis added).

As Centex points out, the parties' signed arbitration agreement contains a forum selection clause that selects Dallas, Texas, not Hawaii, as the forum for arbitration. This strongly suggests to the court that Hawaii is not the proper venue to adjudicate a motion to compel arbitration under the parties' agreement. Dallas is located in the Northen District of Texas. The Northern District of Texas, therefore, would have the power to grant or deny such a motion in accordance with the parties' agreement.

Transfer of a case to cure improper venue is proper when the transfer would be "[f]or the convenience of parties and witnesses," and would also be "in the interest of justice." 28 U.S.C. § 1404(a). The events underlying this case occurred in Hawaii. Thus, Hawaii would undoubtedly be a convenient forum to resolve the parties' dispute. Nevertheless, the court finds it significant that the parties chose "the vicinity of the Named Insured's address" as the location of their putative arbitration. Lexington does not challenge the validity of the arbitration clause in any manner. The court therefore concludes that Dallas, Texas, has been deemed a convenient forum for arbitration by the parties. Moreover, given the freely negotiated forum selection clause in the insurance agreement, transferring the case to the

agreed-upon location would be in the interest of justice.  See

Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) ("[t]he

presence of a forum-selection clause such as the parties entered

into in this case will be a significant factor that figures

centrally in . . . resolution of the § 1404(a) motion in this

case"); see also E.C. Ernst, Inc. v. Potlatch Corp., 462 F. Supp.

694 (S.D.N.Y. 1978) (stating that the Senate Committee on the

Judiciary indicated that 9 U.S.C. § 4 was intended to require a

party seeking to compel arbitration to apply to the proper court)

(citing S. Rep. No. 536, 68th Cong., 1st Sess. 3 (1924)).

Lexington argues that the parties' agreement permits

the arbitration proceeding to take place in locations other than

Texas as "may be mutually agreed" by Centex and Lexington.

Lexington's Br. in Response to Court's OSC 2 (quoting Policy

Section V, ¶ 18), ECF No. 30 ("Lexington's 5/11/11 OSC Resp.").

According to Lexington, by filing a motion to compel arbitration

in the present case, which is pending in Hawaii, Centex has

impliedly agreed to arbitrate in Hawaii.  Id. at 2-3.  The court

does not agree that Centex's participation in this case

demonstrates it has impliedly consented to arbitration in Hawaii.

First, Centex's motion explicitly seeks dismissal of

this case and an order to compel arbitration in Texas, rather

than Hawaii.  See Centex's 2/18/11 Mot. Dismiss 2 (seeking to

dismiss or, in the alternative, to stay the lawsuit, and to

compel arbitration "consistent with Paragraph 18 (the 'Arbitration Clause') contained in [the Policy]"). Indeed, before filing its motion, Centex asked Lexington to withdraw the Complaint, which Lexington did not do. See id. Exh. E (February 2, 2011, letter from Centex's counsel to Lexington's counsel). These actions do not show any agreement by Centex that Hawaii should be the forum for arbitration.

Second, Centex has been actively pursuing arbitration in Texas since February. See Centex's Resp. to Lexington's OSC Resp. Exh. A (February 18, 2011, demand for arbitration, specifying Dallas, Texas as "hearing locale"), ECF No. 31; Centex's 4/15/11 Supp. Br. Exh. A (April 12, 2011, letter from AAA confirming appointment of arbitrators). Lexington acknowledges that it is participating in the arbitration, albeit "under protest," see Lexington's 5/11/11 OSC Resp. 5 n.1, and certainly would not argue that its participation in that arbitration signifies its agreement to the arbitration proceeding in Texas. The court finds it equally plausible that Centex's participation in this court proceeding is also "under protest," such that its motion to dismiss or stay the case and compel arbitration does not represent an agreement by Centex to arbitrate in Hawaii.

Therefore, the court orders this case transferred to the Northern District of Texas for further proceedings. This

transfer would cure any venue issue and would allow the receiving court to decide the issues raised by the pending motion without concern about overriding the parties' agreed-upon forum selection.

C.   The Court Does Not Conclude That the Disputed
     Issues Fall Outside the Arbitration Agreement.

While not disputing the validity of their agreement to arbitrate, Lexington and Centex dispute the scope of the arbitration provision.  The FAA makes clear that the court's task under these circumstances is to determine "whether the agreement encompasses the dispute at issue."  Cox, 533 F.3d at 1119; see 9 U.S.C. § 2.  The relevant portion of the arbitration provision at issue in this case provides, "[I]n the event of a disagreement as to the interpretation of this policy, it is mutually agreed that such dispute shall be submitted to binding arbitration . . . ." Policy § V, ¶ 18, p. 31.

Lexington argues that the present action is nonarbitrable because "the questions at issue here involve application of unambiguous and undisputed policy terms to the facts as Centex has presented them."  Lexington's 3/21/11 Opp. 11.  In its Opposition, Lexington presents the following issues as beyond the scope of the arbitration provision: (1) Whether the SIR has been satisfied; (2) Whether the underlying claim was made within the Policy's coverage period; and (3) Whether the underlying claim is covered by the Policy.  Id. at 12-20.

19

Centex argues that Lexington's Complaint for declaratory relief (and all of the issues therein) requires interpretation of the Policy, and therefore falls within the arbitration provision at hand.  Centex's 2/18/11 Mot. Dismiss 20-21.  While the arbitration provision is not necessarily as broad as Centex asserts, the court is not, on the present record, persuaded that the areas of dispute identified by Lexington preclude arbitration.  If the court were persuaded as to any of the three bases advanced by Lexington, this court would deny Centex's motion.  It is only because the court is not persuaded by Lexington that the court is in the odd position of grappling with whether it could order arbitration in Hawaii.  Given this odd position, the reasons that the court remains unpersuaded become important, even if the merits of the motion to compel arbitration are left to another court to decide.  This court therefore explains in detail why it is unpersuaded as to each of Lexington's three arguments.  The court stresses that, in stating that it is not persuaded by Lexington, the court is not saying that it is ruling in Centex's favor.  Instead, cognizant of Lexington's burden as the plaintiff and of Centex's burden of persuasion as the movant, this court provides its analysis by speaking in the negative because the acceptance of any of

Lexington's three arguments would moot out the need for a transfer.[1]

>   1.   The Court Is Not Persuaded That Satisfaction of the SIR Is a Condition Precedent to Arbitration.

First, Lexington argues that the arbitration provision is subject to a condition precedent. Lexington's 3/21/11 Opp. 12-13. Specifically, Lexington argues that, for Centex to invoke the arbitration provision, it must demonstrate that it has expended $150,000, the amount of the Policy's SIR. See id. Because Centex has allegedly not provided Lexington with documentation that it has spent any money towards the SIR, Lexington requests that the court deny Centex's right to compel arbitration. Id. at 13.

Hawaii courts, following the Second Restatement of Contracts, define a "condition precedent" as "an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due." Brown v. KFC Nat'l Mgmt. Co., 82 Haw. 226, 246, 921 P.2d 146, 166 (1996) (quoting Restatement (Second) of Contracts § 224 (1981)).

---

[1]The court notes that Centex devotes the majority of its legal analysis to arguing that Lexington should be judicially estopped from denying that Policy interpretation is necessarily required for (1) breach of contract claims generally; and (2) questions of whether claims were made during the Policy's coverage period requires interpretation of the Policy. See Centex's 2/18/11 Mot. Dismiss 13-19; Reply 11-16. This court's conclusions in this order make it unnecessary for the court to reach this broad alternative theory.

"Express" and "implied in fact" conditions are those "events
which are made conditions by the agreement of the parties, either
by their words or by other conduct."  Restatement (Second)
Contracts § 226, comment c.  Alternatively, "constructive," or
"implied in law," conditions are those supplied by the court when
the court determines that an omitted term is "essential to a
determination of [the parties'] rights and duties."  <u>See</u> <u>id.</u>
"Conditions are not favored and an intent to create a condition
must appear expressly or by clear implication in the agreement."
<u>In re Spirtos</u>, 154 B.R. 550, 555 (B.A.P. 9th Cir. 1993).

        The Policy does not expressly or impliedly provide that
Centex can only invoke its right to arbitration if it has paid
the SIR.  Although page fifteen of the Policy provides that "[w]e
do not have the duty to investigate or defend any 'occurrence',
offense, claim or 'suit' unless and until the Retained Amount is
exhausted with respect to that 'occurrence', offense, claim or
'suit,'" it does not state that arbitration can only be invoked
in the event this provision is satisfied.  <u>See</u> Policy § I,
Defense & Settlement--Coverages A & B, ¶ 2 ("Within the Retained
Amount"), p. 15.  This provision conditions the duty to defend
against claims on payment of the SIR, but it does not expressly
condition the parties' entry into dispute resolution proceedings
on such payment.  Nor does the arbitration clause expressly
condition its activation on payment of the SIR.  <u>See</u> Policy § V,

                                  22

¶ 18 ("Arbitration"), p. 31 ("Notwithstanding Paragraph 17 of SECTION V--CONDITIONS, Service of Suit,[2] above, in the event of a disagreement as to the interpretation of this policy, it is mutually agreed that such dispute shall be submitted to binding arbitration . . . ."). Lexington points to no conduct by the parties suggesting that they understood payment of the SIR to be a precondition to arbitration. The court therefore declines to rule that payment of the SIR is an express or implied-in-fact condition precedent to Centex's right to arbitrate under the parties' Policy.

Nor does the court rule that payment of the SIR is a condition implied in law. A condition may be implied by the court, irrespective of the parties' intent, if necessary to determine the parties' rights and duties. See Restatement (Second) Contracts § 226, comment c. The court sees no need to imply a condition that the parties may not proceed to arbitration until Centex demonstrates payment of $150,000 in defense of the underlying claims. Centex does not contest that it is required to meet the SIR before Lexington is obligated to defend Centex against claims. If Centex has not yet satisfied the SIR, Lexington might persuade a decisionmaker that Lexington did not

_____

[2]This paragraph provides that Lexington will submit to suit in any court of competent jurisdiction in the United States, sets forth who may be served, and reserves Lexington's right to seek removal or transfer of cases. See Policy § V, ¶ 17 ("Service of Suit"), pp. 30-31.

have to cover the losses alleged.  Alternatively, to the extent

the parties disagree over whether amounts expended by Centex

satisfy the SIR provision, a decisionmaker might evaluate the

parties' arguments in that regard and make a determination.  This

court, while not persuaded on the present record that the

arbitration provision is subject to a condition precedent that

Centex prove it has expended $150,000 on the underlying claims,

leaves the ultimate decision to the court in Texas.

> 2.    The Court Is Not Persuaded That the Issue of
>       Whether Claims Fall Within the Coverage
>       Period Is a Nonarbitrable Issue.

Lexington also contends that the case is not referable

to arbitration because Centex made its claim in March 2010,

outside the Policy's coverage period.  Lexington's 3/21/11 Opp.

14-18.  Without ruling to the contrary, the court states that it

is not persuaded to accept this argument.

As a "claims made" policy, the Policy covers claims

"first made against an insured during the policy period or an

extending reporting period."  See Policy Declarations 1; Policy

1.  A claim is deemed to have been made, inter alia, "[w]hen

notice of such claim is received by any insured or by us,

whichever comes first."  Policy § I, Coverage A, ¶ 1.c.[1], p. 2.

The Policy period is May 12, 2003, to May 20, 2007.  See Policy

Declarations 1.  Additionally, the Policy's "Extended Reporting

Period" "begins on the expiration of this policy and ends when

the applicable statute of limitations with respect to any construction defect expires." Policy § V, ¶ 16 ("Extended Reporting Period"), p. 30.

The court is concerned that determining when a claim was made may well require a decisionmaker to do more than merely apply "clear and unambiguous Policy language." See Lexington's 3/21/11 Opp. 15. In particular, it appears that the parties reach different results on the question of whether the claim was made during the coverage period by relying on two different interpretations of the Policy, as well as two different interpretations of the relevant Hawaii statute of limitations. Lexington argues that Centex's claim was outside the coverage period because the underlying homeowners' claims were untimely. Id. at 16. According to Lexington, the underlying claims of damage from the leaky shower pans accrued by November 2006, at the latest, because they would have been discovered by the affected homeowners shortly after their homes were completed. Id. Hawaii's statute of limitations for property damage is two years from the date the cause of action accrued. See Haw. Rev. Stat. § 657-8(a). If Hawaii law controls, the extended reporting period with respect to such claims arguably closed in November 2008, Lexington's 3/21/11 Opp. 17, which might make the claim reported to Centex in March 2010 fall outside the extended reporting period. See id.

Centex's position is not entirely clear from its briefing, but correspondence between Centex's Assistant General Counsel and Chartis Claims, Inc., Lexington's claims manager, explains that Centex believes the claim was timely made under the Policy. See Ltr. fr. M. Coleman to J. Burruano, Oct. 27, 2010, Decl. Thomas R. Beer Exh. A, ECF No. 14-2. Centex appears to agree that Hawaii Revised Statutes § 657-8 sets the applicable statute of limitations as two years after an action accrues, with an outside limit of ten years after the project is completed. See id. at 2. Centex, however, interprets the Policy's extended reporting period as providing coverage for two years from the date Centex was notified of the loss, or March 2012, with an outside limit of November 2016. See id.

While not expressing an opinion on the merits of Lexington's or Centex's position on whether the claim was timely, and mindful of the court's responsibility to "resolv[e] ambiguities as to the scope of arbitration in favor of arbitration," see Wagner, 83 F.3d at 1049, the court cannot say that the issue of whether the claim was timely made is independent of any interpretation of the Policy. Policy interpretation is subject to arbitration. The parties appear to dispute what the extended reporting period was, with Lexington arguing that a claim falls under the extended reporting period only if the underlying claim itself is timely under Hawaii

26

Revised Statutes § 657-8, and Centex arguing that any

notification of loss falls within the extended reporting period

as long as it is made before November 2016.  Resolving the

parties' potentially differing calculations of the extended

reporting period conceivably involves construing the parties'

arbitration provision.

> 3.    The Court Is Not Persuaded That the Issue of
>        Whether the Policy Covers the Underlying
>        Claims Is a Nonarbitrable Issue.

Lexington argues that no Policy interpretation is

required to deny coverage because Hawaii law holds that

comprehensive general liability policies do not cover

construction defect claims.  Lexington's 3/21/11 Opp. 18-20

(citing Group Builders, Inc. v. Admiral Ins. Co., 123 Haw. 142,

231 P.3d 67 (Ct. App. 2010), and Burlington Ins. Co. v. Oceanic

Design & Constr., Inc., 383 F.3d 940 (9th Cir. 2004)).  However,

the Complaint raises several arguments, based on the Policy's

language, as to why the Policy excludes the underlying claim.

According to the Complaint, "The underlying claims by the unit

owners do not allege 'Property Damage' caused by an 'Occurrence'

as those terms are defined in the Lexington Policy and under

applicable Hawaii law."  Compl. ¶ 17.  The Complaint also alleges

that four other provisions in the Policy may exclude the

underlying claim from coverage:

> Coverage under the Lexington Policy is also
> excluded for: property damage expected or

> intended from the standpoint of the insured;
> liability assumed in a cont[r]act or
> agreement; damage to Defendants' product,
> work and impaired property; damages [a]rising
> out of the failure to render professional
> services by an engineer, architect, or
> surveyor employed by an insured or acting on
> an insured's behalf.

See Compl. ¶ 19; see also Compl. p. 6 (praying for declaration "that the owners' underlying claim does not constitute 'Property Damage' caused by an 'Occurrence' under the terms of the Lexington Policy and Hawaii law").

Moreover, Group Builders and Burlington Insurance only apply to deny coverage if (1) Hawaii law applies, (2) this Policy is determined to be analogous to the policies at issue in those cases, and (3) the underlying claim is determined to be a construction defect claim. These issues arguably require interpretation of Policy language, and the parties agreed that Policy interpretation was to be resolved in arbitration. This court is not persuaded by Lexington that it should resolve this issue.

> D. The Court Does Not Address Centex's Request for
> Attorney's Fees or Costs.

Centex asserts that it should be awarded attorney's fees and costs, pursuant to Hawaii Revised Statutes § 607-14.5, because Lexington filed a frivolous Complaint. Centex's 2/18/11 Mot. Dismiss 22-23. Hawaii Revised Statutes § 607-14.5, states, in pertinent part:

> (a) In any civil action in this State where a
> party seeks money damages or injunctive
> relief, or both, against another party, and
> the case is subsequently decided, the court
> may, as it deems just, assess against either
> party, whether or not the party was a
> prevailing party, and enter as part of its
> order, for which execution may issue, a
> reasonable sum for attorneys' fees and costs,
> in an amount to be determined by the court
> upon a specific finding that all or a portion
> of the party's claim or defense was frivolous
> as provided in subsection (b).
>
> (b) In determining the award of attorneys'
> fees and costs and the amounts to be awarded,
> the court must find in writing that all or a
> portion of the claims or defenses made by the
> party are frivolous and are not reasonably
> supported by the facts and the law in the
> civil action.  In determining whether claims
> or defenses are frivolous, the court may
> consider whether the party alleging that the
> claims or defenses are frivolous had
> submitted to the party asserting the claims
> or defenses a request for their withdrawal as
> provided in subsection (c).  If the court
> determines that only a portion of the claims
> or defenses made by the party are frivolous,
> the court shall determine a reasonable sum
> for attorneys' fees and costs in relation to
> the frivolous claims or defenses.

"A frivolous claim is one manifestly and palpably without merit, so as to indicate bad faith on the pleader's part such that argument to the court was not required." Lee v. Haw. Pac. Health, 121 Haw. 235, 246, 216 P.3d 1258, 1269 (Ct. App. 2009) (citation and quotation marks omitted).  As this court is transferring this case, this matter is not resolved here.

VI.     CONCLUSION.

For the foregoing reasons, the court orders the clerk of court to TRANSFER VENUE of this case to the United States District Court for the Northern District of Texas.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 13, 2011.



 /s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge